Case 7:26-cv-00568-NSR   Document 12   Filed 02...

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL JOSE PALACIOS VENTURA,

Petitioner,

-against-

PAMELA BONDI, *in her official capacity as Attorney General*, et al.,

Respondents.

7:26 CV 568 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Petitioner Michael Jose Palacios Ventura ("Petitioner") commenced this action by filing a petition for a writ of *habeas corpus* on January 21, 2026, alleging that United States Immigration and Customs Enforcement ("ICE") is unlawfully detaining him. (ECF No. 1.) Petitioner subsequently filed an emergency motion for a temporary restraining order and preliminary injunction seeking (1) his immediate release from ICE custody and to Petitioner's legal guardian, or, in the alternative, (2) an Order for a bond hearing. (ECF No. 2, "Pet'r Mot.") As a result, the Court issued an order preventing Petitioner's transfer outside of the Southern District of New York while his *habeas* petition remains pending. (ECF No. 7.)

For the following reasons, the Court GRANTS Petitioner's motion.[1]

**FACTUAL BACKGROUND**

Petitioner, a Honduran national, entered the United States on March 26, 2019, at age thirteen (13), accompanied by his father. (Pet'r Mot. at 3; (Resp'ts Opp., Att. 1) Petitioner and his

---

[1] The Parties notified the Court by way of an email on February 26, 2026 that the Parties were forgoing a hearing for this action and thus the Court should rely only on the Parties' submissions for its decision. Accordingly, the hearing previously scheduled for February 27, 2026 is cancelled.

1

father presented at the Port of Entry in Presidio, Texas, where Respondents processed them as a family unit as arriving applicants for admission, found Petitioner inadmissible under Immigration and Nationality Act § 212(a)(7)(A)(i)(l), and released Petitioner and his father on their own recognizance pending removal proceedings. (*Id.*) Petitioner thereafter lived openly in the United States and has resided continuously in the United States for 7 years. (*Id.* at 1.) During this time, Petitioner's father abandoned him as a minor and Petitioner failed to appear in court, resulting in an *in absentia* removal order at age thirteen. (*Id.* at 3.)

On October 9, 2025, Petitioner learned that he had been ordered removed or lacked lawful status after ICE arrested him during a traffic stop. (*Id.*) Petitioner's guardian retained counsel and the Immigration Court granted reopening and vacated the *in absentia* removal order. (*Id.*) Petitioner is now in active removal proceedings under 8 U.S.C. § 1229(a), without a final order of removal. (*Id.*) Petitioner now seeks relief from this Court.

## LEGAL STANDARD

**I.**     **Temporary Restraining Order**

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "A plaintiff seeking a [TRO or] preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party to the suit, [the court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

"The district court has wide discretion in determining whether to grant a [TRO or] preliminary injunction." *Valenzuela Arias*, 612 F. Supp. 3d at 311 (quoting *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (per curiam)). That being said, "[a] preliminary injunction is an extraordinary remedy," *Winter*, 555 U.S. at 24, and "should not be routinely granted." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Med. Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). And "[w]hen deciding whether to issue a preliminary injunction, courts 'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *We The Patriots USA, Inc.*, 17 F.4th at 279 (quoting *Winter*, 555 U.S. at 24).

## II.    Section 2241 Petition

28 U.S.C. § 2241 "authorizes a district court to grant a writ of *habeas corpus* whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a *habeas* petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the *habeas* proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in *habeas* courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Id.* (alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

**DISCUSSION**

Petitioner now moves for a temporary restraining order and preliminary injunction seeking (1) his immediate release from ICE custody and to Petitioner's legal guardian, or, in the alternative, (2) an Order for a bond hearing. (Pet'r Mot. at 4.) Petitioner argues that he is being unlawfully detained pursuant to § 1225(b)(2), which improperly denies him a bond hearing and violates the Due Process Clause of the Fifth Amendment. (*Id*. at 1–2.) Petitioner instead asserts that his detention is governed by § 1226(a), which would entitle him to a bond hearing, on the basis that he was previously released on his own recognizance, has resided in the U.S. for seven years since, and is currently subject to reopened removal proceedings. (*Id*.) In response, Respondents, while acknowledging the Court's prior decision in *Veletanga v. Noem*, No. 25 Civ. 9211 (NSR), 2025 WL 3751865 (S.D.N.Y. Dec. 26, 2025), a similar *habeas* case, contend that detention under § 1225(b)(2)(A) is proper.[2] (Resp'ts Opp. at 1.) The Court now addresses each claim in turn.

**I.     Detention Under 8 U.S.C. § 1225(b)(2)**

   **a.  Likelihood on the Merits**

It is well established that "[t]o implement its immigration policy, the [g]overnment must be able to decide (1) who may enter the country and (2) who may remain here after entering." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). For decades, these two inquiries have been recognized and treated as distinct. Indeed, "[t]he distinction between [a noncitizen] who has

---

[2] Respondents acknowledge that this Court recently resolved nearly identical claims in *Veletanga*, 2025 WL 3751865, at *3-4, holding that an alien in Petitioner's position can be detained only under § 1226(a). Respondents note that they disagree with the Court's decision in *Veletanga*, but recognize that the Court likely will adhere to its prior ruling in this very similar *habeas* action. Accordingly, in their response letter, Respondents note that they "rely upon, and incorporate[] by reference, the legal arguments the government presented in *Veletanga*," obviating the need for further briefing. (Resp'ts Opp. at 3.) Respondents argue that if the Court adheres to *Veletanga*, the proper remedy is an order directing a bond hearing under § 1226(a), not outright release. (*Id.*)

4

effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Until five months ago, the Department of Homeland Security ("DHS") recognized this dichotomy and operated under two separate statutory schemes governing the detention of noncitizens: (1) § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and (2) § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally. *See Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025). The Supreme Court further solidified this understanding. *See Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).").

DHS now appears to have departed from Supreme Court precedent and decades of established practice by taking the position that anyone physically present in the United States without having been legally "admitted"—regardless of the duration of their presence—falls under § 1225(b)(2), which mandates detention. *See Alvarez*, 2025 WL 3085032, at *1; *Romero v. Hyde*, 795 F. Supp. 3d 271, 282–283 (D. Mass. Aug. 19, 2025) ("[R]espondents' new interpretation is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." (internal citations omitted)). DHS takes this position in light of the Board of Immigration Appeals' recent determination treating noncitizens who have entered the United States and those who have never entered as

indistinguishable for purposes of detention. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025).

Typically, when statutes are at issue, a court's starting point is analyzing the statutory text. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). This Court need not reinvent the wheel—numerous courts in the Second Circuit have already interpreted the differences between §§ 1225(b)(2) and 1226(a). A majority of these courts have determined that § 1225(b)(2) applies only to noncitizens who are actively "seeking admission" at or near the border, or who have been paroled into the United States. *See, e.g., Alvarez Ortiz*, 2025 WL 3085032, at *10 ("this Court finds that section 1225(b)(2) applies only to noncitizens actively 'seeking admission' at or near the border or who have been paroled."); *Hyppolite v. Noem, et al*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) ("the Court now joins the broad consensus among Article III courts to date, and finds that § 1225(b)(2)(A) does not apply to a noncitizen like [petitioner], who has been living in the United States for years, and that his detention can only be authorized if the procedures followed comply with 8 U.S.C. § 1226(a)."); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 494 (E.D.N.Y. 2025) ("This Court finds that the historical practice—under which § 1225(b)(2)(A) would not have applied to Petitioner—is consistent with the text, structure, and statutory scheme."). The Second Circuit is not alone in reaching this conclusion.[3] Indeed, as recently as December 12, 2025, district courts have held that a noncitizen who has resided in the United States for at least two years may not be detained pursuant to § 1225(b)(2). *See Reyes Benitez v. Noem, et al.*, 2025 WL 3560575, at *2 (S.D. Cal. Dec. 12, 2025).

---

[3] An abundance of district courts around the country have disagreed with *Matter of Yajure Hurtado* and have granted habeas petitions or motions for injunctive relief for noncitizens whom DHS has improperly detained under § 1225(b)(2). *See, e.g., Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297 (D. Mass. 2025); *Lepe v. Andrews*, 801 F. Supp. 3d 1104 (E.D. Cal. 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, 800 F. Supp. 3d 641 (E.D. Va. 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59 (D.N.H. 2025); *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).

In the instant action, Petitioner is a citizen and national of Honduras who arrived in the United States as a minor in 2019. (Pet'r Mot. at 3.) He has remained continuously present in the United States since that time. (*Id.*) In light of the growing consensus of district courts nationwide rejecting the Board of Immigration Appeals' reasoning in *Matter of Yajure-Hurtado*, this Court likewise concludes that Petitioner may not be detained pursuant to § 1225(b)(2). *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025) ("[Petitioner in *Martinez*] had been residing in the United States for more than two years at the time of his arrest and detention in 2025.…He was not 'seeking admission' at that time and is therefore not subject to § 1225(b). Adopting the reasoning and conclusions set forth in *Martinez*, the Court likewise concludes that Petitioner is not subject to mandatory detention under § 1225(b).") (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. 2025).

**b. Irreparable Harm**

Having found that Petitioner is likely being unlawfully detained pursuant to § 1225(b)(2), the Court next considers whether he will suffer irreparable harm. Freedom from imprisonment—government custody, detention, or other forms of physical restraint—lies at the heart of the liberty protected by the Due Process Clause. *See Cabral v. Decker*, 331 F. Supp. 3d 255, 263 (S.D.N.Y. 2018) (citing *Zadvydas*, 533 U.S. at 690). Indeed, the Second Circuit has established that an "alleged constitutional violation constitutes irreparable harm." *Torres-Jurado v. Biden*, No. 19 CIV. 3595 (AT), 2023 WL 7130898, at *5 (S.D.N.Y. Oct. 29, 2023) (quoting *Basank v. Decker*, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020) (collecting cases)); *accord Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999). In cases not dissimilar to this one, courts have "easily" found irreparable harm where a petitioner is being wrongfully detained pursuant to § 1225(b)(2). *See, e.g., Alvarez*, 2025 WL 3085032, at *11; *Guerrero Orellana v. Moniz*, 802 F.

Supp. 3d 297, 312 (D. Mass. 2025); *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025).

Petitioner contends that his due process rights have been violated by his prolonged mandatory detention without a bond hearing for more than four months. (Pet'r Mot. at 19–21.) This Court agrees. It is well established that an alleged violation of certain constitutional rights, even for minimal periods of time, constitutes irreparable injury. *See Averhart v. Annucci*, No. 21-CV-383 (NSR), 2021 WL 2383556, at *9 (S.D.N.Y. June 10, 2021) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")). The Court therefore finds that Petitioner's loss of liberty in the absence of preliminary injunctive relief would constitute irreparable harm.

c. **Balance of Equities / Public Interest**

The remaining preliminary injunction factors—the balance of equities and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Where, as here, a petitioner alleges constitutional violations, the balance of hardships "tips decidedly in the [petitioner's] favor." *Torres-Jurado*, 2023 WL 7130898, at *5. Similarly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." *Rhode Island v. Trump*, 155 F.4th 35, 50 (1st Cir. 2025) (quoting *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025)). Nevertheless, under § 1226(a), a noncitizen seeking release on bond must demonstrate to the satisfaction of the relevant officer that release would not pose a danger to property or persons and that the petitioner is likely to appear for any future proceedings. *See Romero v. Francis*, 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025) (citing *Jennings*, 583 U.S. at 306).

Here, the current record does not show Petitioner would pose any such danger or that he will not appear for future proceedings. In fact, Respondents concede that Petitioner has no criminal history (Resp'ts Opp. at 2 n.1.), and they identify no evidence suggesting he presents either a danger to the community or a risk of nonappearance.

## CONCLUSION

Based on the foregoing discussion and the Court's analysis of Petitioner's detention under § 1226(a), this Court concludes that Petitioner's prolonged detention without a bond hearing is unreasonable and a violation of due process and that Petitioner does not pose a danger to the community or a risk of flight. Accordingly, the Court finds that in this case the appropriate remedy is Petitioner's outright release.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 2 and to cancel the hearing previously scheduled for February 27, 2026.

SO ORDERED.

Dated: February 26, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.