MEMO ENDORSED

Jessica Ventura, Esq. (NY SBN # 5842851)
Rivera Julka Law Group, PC.
17 W. Main Street,
Bay Shore, NY 11706
Telephone: (631) 647-9040
Email: jessica@riverajulka.com
*Counsel for Petitioner*

*Counsel for Petitioner*

**The Government has failed to respond to Petitioner's motion for attorney's fees. The Court grants the Government an additional 21 days, until November 20, 2026, to file its response. If the Government fails to respond by that date, the motion shall be deemed fully submitted. If the Government files a response, Petitioner shall file any reply by December 4, 2026.**

**Dated: October 30, 2026**
**White Plains, NY**

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

PALACIOS VENTURA, Michael Jose
Alien #201-591-939,

Petitioner,

v.

PAMELA BONDI, in her official capacity as Attorney General,

KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,

U.S. DEPARTMENT OF HOMELAND SECURITY,

KENNETH GENALO, in his official capacity as Acting Field Office Director of the New York Field Office for U.S. Immigration and Customs Enforcement,

PAUL ARTETA, in his official capacity as director of the Orange County Correctional Facility,

TODD LYONS, in his official capacity as Acting ICE Field Office Director,

Respondents.

Case No. 7:26-CV-00568

**PETITIONER'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT**

# TABLE OF CONTENTS


**INTRODUCTION** .......... 1

**STATEMENT OF FACTS AND PROCEDURAL HISTORY** .......... 2

**LEGAL STANDARD** .......... 5

*A. Statutory Framework of the Equal Access to Justice Act* .......... 5

*B. Statutory Requirements for an EAJA Award* .......... 6

*C. Prevailing Party Standard* .......... 6

*D. Substantial Justification Standard* .......... 7

*E. Absence of Special Circumstances* .......... 8

*F. Net Worth Requirement* .......... 8

*G. Timeliness of EAJA Applications* .......... 9

*H. Reasonableness of Fees and "Fees on Fees"* .......... 9

**ARGUMENT** .......... 11

**A. Petitioner is a Prevailing Party Because This Court Granted Habeas Relief That Materially Altered the Parties' Legal Relationship** .......... 11

**B. The Government's Underlying Conduct and Litigation Positions Were Not Substantially Justified** .......... 13

*i. Respondents' Pre-Litigation Conduct Was Not Substantially Justified* .......... 13

*ii. Respondents' Litigation Position Was Not Substantially Justified* .......... 15

*iii. The Government Cannot Carry Its Burden to Show Its Position Was Reasonable in Law or Fact* 16

**C. No Special Circumstances Make an Award of Fees Unjust** .......... 17

**D. Petitioner Satisfies EAJA's Net Worth Requirement** .......... 18

**E. The Requested Fees and Expenses Are Reasonable** ..... 19

*i. The Hours Expended Were Reasonable* ..... 19

*ii. The Requested Hourly Rates Are Reasonable* ..... 21

*iii. The Requested Expenses Are Reasonable and Compensable* ..... 21

**CONCLUSION** ..... 22

**Cases**

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–05 (2001) ..... 8, 12

*Commissioner, INS v. Jean*, 496 U.S. 154, 163 (1990) ..... 7, 9

*Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) ..... 8, 9

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ..... 9, 11

*Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) ..... 11

*Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991) ..... 10

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ..... 22

*Perez v. Westchester County Dep't. of Corrections*, 587 F.3d 143, 149 (2d Cir. 2009) ..... 8

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ..... 9, 14

*Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008) ..... 23

*Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57-59 (2d Cir. 1995) ..... 9

*Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005) ..... 7, 8

*Yao v. Almodovar*, --- F.Supp.3d ----, 2025 WL 3653433 (S.D.N.Y. Dec. 17, 2025) ..... 8

**Statutes**

28 U.S.C. § 2412 ..... 1

28 U.S.C. § 2412(d)(1)(A) ..... passim

28 U.S.C. § 2412(d)(1)(B) ..... 10

28 U.S.C. § 2412(d)(2)(A) ..... 11, 22

28 U.S.C. § 2412(d)(2)(B) .......... 10, 19

**Other Authorities**

**Exhibit A**, Petitioner's Net Worth and Assignment Affidavit, ¶ 2 .......... 18

**Exhibit B**, Petitioner's Attorneys' Fees and Expenses Calculation Sheet .......... 19

## INTRODUCTION

Petitioner Michael Jose Palacios Ventura respectfully moves for an award of attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. This is precisely the type of case for which Congress enacted EAJA: one in which an individual was forced to seek federal court intervention to correct unjustified government action.

Petitioner was arrested in New York and then detained for months based on Respondents' erroneous position that he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2). That position deprived him of access to any bond hearing and forced him to file an emergency habeas petition and a motion for a temporary restraining order in this Court. After an expedited briefing, this Court granted habeas relief, ruling that Petitioner was detained under 8 U.S.C. § 1226(a) rather than § 1225, rejected Respondents' jurisdictional arguments, found that his detention without a bond hearing violated due process, and ordered Respondents to immediately release the Petitioner as he did not pose a danger to the community or was considered a flight risk. Judgment was entered on February 26, 2026. Respondents did not file an appeal on this matter; therefore, the relief obtained by Petitioner remains intact and final.

EAJA requires a fee award when, as in this case, the petitioner is the prevailing party, the government's position was not substantially justified, no special circumstances make an award unjust, and the requested fees and expenses are

reasonable. 28 U.S.C. § 2412(d)(1)(A). The Petitioner satisfies each of these criteria. Therefore, he respectfully requests an award of $14,906.16 for reasonable attorneys' fees and expenses.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner Michael Jose Palacios Ventura (hereinafter "Petitioner" or "Michael") entered the U.S. in 2019 at age thirteen (13) with his father. Michael and his father were given a credible fear interview and, after affirmatively passing it, were found to be inadmissible, placed in removal proceedings, and released on their own recognizance. Michael and his father moved to New York, but his father soon abandoned him. This resulted in Michael unknowingly failing to appear in court as required. As a result, the Immigration Court issued a removal order against Michael. Michael, unaware of his removal order, continued to live in New York with a relative and, eventually, a new legal guardian. On October 9, 2025, at the age of twenty (20), Michael was pulled over by ICE officers early in the morning while he was on his way to work. He provided his information as requested and was informed that there were no traffic or criminal violations, but they needed to verify his information. In confirming Michael's identity, ICE officers also saw the removal order he obtained in 2019. Shortly after, Michael was handcuffed and detained by ICE officers for violating immigration laws.

Shortly after being detained and processed, Michael was transferred to the Orange County Correctional Facility. Faced with his ongoing detention and his removal order, Michael and his legal guardian quickly retained an attorney, specifically undersigned counsel. Undersigned counsel was able to reopen Michael’s immigration case and vacate his removal order. After this, Michael’s immigration matter was reopened and continued pending before the court. However, due to the Respondent's newly implemented policy of mandatory detention for noncitizens, Michael was unable to request a meaningful bond hearing before the immigration court, as Immigration Judges no longer had the jurisdiction to grant bond to noncitizens without legal admission. This directly affected Michael as he entered without inspection or admission in 2019.

Faced with ongoing and indefinite detention and the denial of any meaningful custody review, Michael filed the instant Petition for a Writ of Habeas Corpus and Motion for Temporary Restraining Order on January 21, 2026. On January 29, 2026, this Court issued an order administratively staying any transfer or removal of Michael to any location outside of the Southern District of New York. On this same day, this Court also issued an order directing Respondents to show cause in writing by February 9, 2026, to file an opposition to Petitioner’s writ. The Petitioner was given until February 20, 2026, to file a reply to the Respondent’s response, and a hearing date was scheduled for February 27, 2026, to show cause why the relief sought should not be granted.

On February 9, 2026, the Respondents filed a letter in lieu of a formal response. In this letter, the Respondents address the court's prior decisions in *Veletanga v. Noem*, No. 25 Civ. 9211 (NSR), 2025 WL 3751865 (S.D.N.Y. Dec. 26, 2025) and argue that, since this Court had already resolved nearly identical claims, the decision would control. The Respondents briefly and in passing state that they disagree with the holding in this Court's decision in *Veletanga v. Noem*, but do not elaborate on the basis for their disagreement. Ultimately, in their letter, they argue that if the Court were to hold similarly in Petitioner's case, the proper relief would be a bond hearing – not immediate release.

Pursuant to the Court's February 29, 2026, Order, Petitioner filed his written reply to Respondent's response to the Order to Show Cause on February 17, 2026. On February 26, 2026, this Court issued its Memorandum and Order granting the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. The Court found that Michael's detention without an individualized custody determination or bond hearing violated the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Specifically, the Court determined that Petitioner was detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), and that his detention without the procedures required by Section 1226(a) and its implementing regulations was unlawful. The Court also held that Respondents violated Petitioner's Fifth Amendment right to due process by detaining him without an individualized custody determination or bond hearing. As

relief, the Court granted the habeas petition and instructed the Respondents to immediately release Michael.

Respondents did not appeal the Court's February 26, 2026 judgment. As a result, the judgment became final and non-appealable after the government's sixty-day appeal period expired.

Through this litigation, Petitioner obtained exactly the relief he sought: immediate release from unlawful detention and a final merits determination that Respondents had violated the INA and the Fifth Amendment. The Court's orders materially altered the legal relationship between the parties, and the government did not appeal.

Petitioner now seeks an award of reasonable attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412, following his success in obtaining habeas relief.

## LEGAL STANDARD

*A. Statutory Framework of the Equal Access to Justice Act*

The Equal Access to Justice Act ("EAJA") states that a court shall award reasonable attorney's fees and expenses to a prevailing party other than the United States in any civil action, including proceedings for judicial review of agency actions, unless the court finds that the United States' position was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

The Supreme Court has explained that EAJA was enacted to remove barriers to challenging unreasonable government action, noting that the statute is designed to ensure that individuals are not deterred "from seeking review of, or defending against, unreasonable governmental action because of the expense involved." *Commissioner, INS v. Jean*, 496 U.S. 154, 163 (1990).

EAJA applies to habeas proceedings brought under 28 U.S.C. § 2241, including immigration detention challenges. *See Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005) (recognizing EAJA applicability in immigration habeas context).

*B. Statutory Requirements for an EAJA Award*

To recover fees under EAJA, a petitioner must establish (1) that they are a prevailing party, (2) that the government's position was not substantially justified, (3) that no special circumstances make an award unjust, and (4) that the requested fees and costs are reasonable. 28 U.S.C. §2412(d)(1)(A). Once the petitioner establishes prevailing party status, the burden shifts to the government to demonstrate that its position was substantially justified. *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

*C. Prevailing Party Standard*

A party is considered "prevailing" under EAJA if they obtain a "material alteration of the legal relationship of the parties" that is judicially sanctioned. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–05 (2001).

The Second Circuit has applied this standard in the EAJA context, holding that a party prevails when they secure relief that is judicially sanctioned and materially alters the legal relationship between the parties. *Vacchio*, 404 F.3d at 674; *Perez v. Westchester County Dep't. of Corrections*, 587 F.3d 143, 149 (2d Cir. 2009). Courts in this Circuit find prevailing party status where a habeas petitioner obtains release from immigration detention pursuant to a court order. *See Yao v. Almodovar*, --- F.Supp.3d ----, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025). Such relief directly changes the petitioner's custody status and imposes binding obligations on the government, thereby satisfying the prevailing party requirement.

A party need not prevail on every issue raised in the litigation so long as they succeed on a significant claim that affords some of the relief sought. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

*D. Substantial Justification Standard*

Even when a petitioner is a prevailing party, fees may be denied if the government proves that its position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court has explained "substantially justified" to mean "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Second Circuit has emphasized that this standard requires the government's position to be "justified to a degree that could satisfy a reasonable person," and that the

government must show that its position had a "reasonable basis in both law and fact." *Healey*, 485 F.3d at 67 (quoting *Pierce*, 487 U.S. at 565).

The government's burden encompasses both the underlying agency action and its litigation position. *See Jean*, 496 U.S. at 159 ("only one threshold determination for the entire civil action is to be made").

Courts in this Circuit have found that where the government's position is contrary to established law or unsupported by the record, it is not substantially justified. See *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57-59 (2d Cir. 1995) (finding lack of substantial justification where agency position lacked reasonable basis in law and fact).

*E. Absence of Special Circumstances*

Even when the statutory requirements are met, fees can be denied if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). However, this is a limited exception, and courts rarely find that special circumstances are enough to reject an otherwise valid fee request. The government bears the burden of proving that such circumstances exist.

*F. Net Worth Requirement*

EAJA eligibility is limited to parties whose net worth did not exceed $2,000,000 at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B). The petitioner has the burden of establishing eligibility through a declaration or other competent evidence demonstrating compliance with this requirement.

*G. Timeliness of EAJA Applications*

EAJA requires that a fee application be filed within thirty (30) days of "final judgment." 28 U.S.C. § 2412(d)(1)(B). "Final judgment" means a judgment that is "final and not appealable." 28 U.S.C. § 2412(d)(2)(G).

In cases involving the United States, the judgment becomes final after the expiration of the 60-day period for filing a notice of appeal. *See* Fed. R. App. P. 4(a)(1)(B); *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991) (EAJA clock begins after judgment becomes final and unappealable).

*H. Reasonableness of Fees and "Fees on Fees"*

Fee awards under EAJA are limited to those fees "reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A prevailing party is also entitled to recover fees incurred in preparing and litigating the EAJA application itself. *Jean*, 496 U.S. at 162–65.

*I. Statutory Rates and Enhanced Fees*

EAJA establishes a statutory hourly rate, subject to cost-of-living adjustments and potential enhancement where "special factors" justify a higher rate. 28 U.S.C. § 2412(d)(2)(A).

Although "special factors" are construed narrowly, enhanced rates are appropriate where the litigation required "distinctive knowledge or specialized skill needful for the litigation" that is not available at the statutory rate. *Pierce*, 487 U.S. at 572. Courts have recognized that such factors may exist where counsel must navigate a highly

specialized statutory and constitutional framework that demands expertise beyond routine practice. *See id.* (identifying "specialized skill" as a qualifying factor).

This case demanded more than standard immigration expertise. Counsel was required to litigate a swiftly changing and highly technical intersection of immigration detention statutes, constitutional due process principles, and nationwide class action developments, including the interaction between 8 U.S.C. §§ 1225 and 1226, the procedural protections required under the Fifth Amendment, and the legal impact of the nationwide class wide declaratory judgment issued in *Maldonado Bautista v. Santacruz*. Moreover, counsel was required to litigate under extreme time constraints in an emergency habeas posture, including responding to an Order to Show Cause on an expedited basis and securing immediate release through injunctive relief. This required not only subject-matter expertise but also the ability to synthesize emerging nationwide authority and apply it in real time to secure constitutionally required relief.

Such work reflects "specialized skill" within the meaning of *Pierce*, particularly where, as in this case, the litigation involved novel and unsettled questions of law and demanded immediate, high-stakes advocacy to prevent ongoing unlawful detention. The combination of statutory complexity, constitutional analysis, and rapidly evolving nationwide precedent places this case outside the scope of routine immigration litigation and justifies an enhanced rate.

## ARGUMENT

**A. Petitioner is a Prevailing Party Because This Court Granted Habeas Relief That Materially Altered the Parties' Legal Relationship**

To qualify for an award of attorneys' fees under EAJA, a petitioner must establish that he is a "prevailing party." 28 U.S.C. § 2412(d)(1)(A). A party is considered prevailing when he achieves a "material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Buckhannon*, 532 U.S. at 604–05 (2001). The Second Circuit applies this standard in the EAJA context, holding that a litigant prevails when he secures court-ordered relief that "materially alters the legal relationship between the parties." *Vacchio*, 404 F.3d at 672-73. A party may need not prevail on every issue; rather, he prevails so long as he obtains "actual relief on the merits" that achieves some of the benefit sought in bringing suit. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); see also *Hensley*, 461 U.S. at 433 (1983).

Here, Petitioner easily satisfies that standard. Petitioner filed this habeas action to contest his unlawful detention without access to a bond hearing and to seek either release or, at a minimum, a prompt and lawful custody determination. Following expedited briefing and in-person oral argument, the Court granted the petition for a writ of habeas corpus and ordered Respondents to immediately release the Petitioner. The Clerk entered judgment on February 26, 2026.

This relief was neither procedural nor incidental. It directly addressed and remedied the core injury underlying this litigation: Petitioner's ongoing detention without a meaningful custody review opportunity. By granting immediate release under the

correct statutory framework and restricting Respondents' ability to continue to unlawfully detain the Petitioner, the Court fundamentally changed Respondents' legal obligations toward Petitioner. That is precisely the type of "material alteration of the legal relationship of the parties" that confers prevailing party status. *Buckhannon*, 532 U.S. at 604.

Courts in this Circuit recognize that relief from unlawful detention constitutes a paradigmatic example of prevailing party status because it effects a concrete and judicially enforceable change in the parties' legal relationship. See *Vacchio*, 404 F.3d at 672-73; *see also Perez*, 587 F.3d at 149 (2d Cir. 2009) (a party prevails when he obtains actual relief on the merits that materially alters the parties' relationship).

The procedural history further confirms Petitioner's status as a prevailing party. Following the Court's February 26, 2026, judgment granting habeas relief, Respondents did not appeal. As a result, the Court's judgment became final and binding, and the relief obtained by the Petitioner was both enduring and unchallenging.

In short, Petitioner did not merely obtain interim or voluntary relief; he secured court-ordered habeas relief that imposed binding obligations on Respondents and corrected an unlawful detention framework.

Accordingly, Petitioner satisfies the prevailing party requirement and is eligible for an award of reasonable attorneys' fees and expenses under 28 U.S.C. § 2412.

**B. The Government's Underlying Conduct and Litigation Positions Were Not Substantially Justified**

Even when a petitioner is the prevailing party, the government can avoid an award of fees only if it shows that its position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court has explained that "substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

This is not a forgiving standard. The government must establish that both its underlying conduct and its litigation positions had a reasonable basis in law and fact. *Id.*; *Jean*, 496 U.S. at 158 n.6; *Ibrahim*, 912 F.3d at1168. Moreover, the government's position must be substantially justified "at each stage of the proceedings," and failure at any stage is sufficient to warrant fees. *Meier*, 727 F.3d at 872.

Respondents cannot meet that burden here.

*i. Respondents' Pre-Litigation Conduct Was Not Substantially Justified*

Respondents' conduct leading up to this litigation lacked a reasonable basis in both law and fact and directly necessitated the filing of this habeas action.

Petitioner, who had been residing in the United States for over seven (7) years and had substantial ties within his community, was arrested by ICE officers and detained. Once Petitioner's immigration proceedings began, Respondents took the position that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which denied him access to release or a bond hearing entirely, despite the fact that he was arrested within the interior of the country and had resided in the U.S. for several years

by this point. That position was ultimately found to be incorrect. This Court explicitly rejected Respondents' interpretation and ruled that Petitioner was instead subject to detention under 8 U.S.C. § 1226(a), which entitles a noncitizen to an individualized custody determination.

In reaching that conclusion, the Court joined a substantial body of authority rejecting Respondents' expansive interpretation of §1225 as inconsistent with the text and structure of the Immigration and Nationality Act. The Court explained that §1225 governs individuals already present in the United States pending removal proceedings. Respondents' conflicting interpretation of these statutes would improperly collapse those distinct statutory schemes.

Because the Respondents' statutory position was inconsistent with the governing statutory framework and abruptly deviated from long-standing practice, and had already been rejected by numerous courts, their decision to detain Petitioner without providing the process required under §1226(a) lacked a reasonable basis in law. *See Sotelo-Aquije,* 62 F.3d at 57 (government position not substantially justified where it lacks a reasonable basis in law and fact). Moreover, Respondents' conduct resulted in Petitioner's continued detention without any individualized determination of custody, despite no evidence that he posed a flight risk or danger to the community. The deprivation of liberty without the procedural protections required by law and the Constitution highlights the lack of justification for the Respondent's actions.

Taken together, Respondents' pre-litigation conduct reflects a pattern of unsupported legal positions. Respondents' actions compelled the Petitioner to seek emergency federal relief to obtain a basic procedural safeguard. Such conduct is not one that a reasonable person would view as justified.

*ii. Respondents' Litigation Position Was Not Substantially Justified*

Respondents' litigation positions fare no better.

In this action, Respondents conceded that the Court had recently ruled on an analogous case and presumed the Court's position would be the same. In lieu of a formal motion, the Respondents filed a three (3) page letter in which they hardly argue against the Petitioner's position and instead, in passing, state that they disagree with this Court's position in *Veletenga v. Noemi*, without addressing why. The Petitioner was detained, denied the constitutional protections to which he was entitled, and suffered irreparable harm as a result, yet the Respondents hardly bothered to defend their position. Further highlighting the lack of justification for the detention and harm the Petitioner had to endure. Given the Respondents' minimal response and the Petitioner's reply, this Court granted the Petitioner's writ of habeas corpus.

A position rejected on both jurisdictional and merits grounds—especially when it results in a finding of unconstitutional detention—lacks a reasonable basis in law. *See Thangaraja*, 428 F.3d at 875 (the government's position is not substantially justified when it is "entirely unsupported by the record"). Further, the Respondent's own minimal response confirms their litigation position was not substantially justified.

Despite the detrimental effect on Michael's life during his detention, the Respondents could not sufficiently justify their position to this Court as to why Michael should have remained detained. The Court granted Petitioner's motion and granted Michael's immediate release as nothing in the record justified his continued detention. As such, the Respondents' litigation position evidently was not substantially justified as it was not something they could even properly defend against before this Court.

*iii. The Government Cannot Carry Its Burden to Show Its Position Was Reasonable in Law or Fact*

The burden of demonstrating substantial justification rests squarely with the government. *Meier*, 727 F.3d at 870. To satisfy this burden, Respondents must show that their position, considered as a whole, had a reasonable basis in both law and fact at every stage of the proceedings. *Jean*, 496 U.S. at 158–60; *Ibrahim*, 912 F.3d at 1168. They cannot do so here.

Respondents' pre-litigation conduct deprived Petitioner of access to a bond hearing through an erroneous statutory classification. This classification was a sudden departure from the Respondents' statutory classification policy implemented over three (3) decades ago. Additionally, this classification continued to be heavily litigated nationwide on a daily basis and drew national outcry not only for its sudden departure from longstanding practice but also for its blatant constitutional violations.

Where, as here, the government's actions conflict with governing law and result in unlawful detention, courts routinely conclude that the government's position was not

substantially justified. *See Sotleo-Aquije*, 62 F.3d at 57. Accordingly, Respondents cannot satisfy their EAJA burden, and an award of attorneys' fees is warranted.

**C. No Special Circumstances Make an Award of Fees Unjust**

Even when a Petitioner satisfies the requirements for an award under EAJA, a court may deny fees if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This is a narrow exception, and the burden rests on the government to demonstrate that such circumstances exist.

No such circumstances are present here.

This case clearly demonstrates EAJA's primary goal: to compensate individuals who are forced to litigate against unjustified government action. Petitioner was subjected to prolonged detention without access to a lawful bond hearing, based on the Respondents' erroneous statutory interpretation and procedural missteps. Only after the Petitioner filed federal habeas corpus proceedings did the Court intervene and order relief to correct that unlawful detention.

There is nothing unfair about awarding fees in these circumstances. On the contrary, denying fees would undermine EAJA's purpose by shifting the financial burden of correcting government errors onto the very party harmed by that error. *See Jean,* 496 U.S. at 163 n.11.

Nor is there any indication of bad faith, misconduct, or any other equitable consideration on the part of Petitioner that would justify denying fees. Petitioner

diligently pursued his claims, obtained judicially sanctioned relief, and seeks only reasonable compensation for the work required to secure that result.

Accordingly, because Respondents cannot identify—let alone meet their burden to establish—any special circumstances that would make a fee award unjust, this exception does not apply.

**D. Petitioner Satisfies EAJA's Net Worth Requirement**

Eligibility for an award under EAJA is limited to parties whose net worth did not exceed $2,000,000 at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B). The applicant bears the burden of demonstrating eligibility through a declaration or other competent evidence.

Petitioner satisfies this requirement. As detailed in the attached declaration, Petitioner's net worth at the time this action was filed was well below the statutory threshold of $2,000,000. *See* **Exhibit A**, Petitioner's Net Worth and Assignment Affidavit, ¶ 2. Petitioner is a twenty (20)- year-old young man who was abandoned by his father in the U.S. and has since lived on limited financial means. He does not possess assets approaching the statutory cap. Courts commonly accept such sworn statements as enough to prove EAJA eligibility.

Accordingly, Petitioner meets EAJA's net worth requirement and is eligible to recover attorneys' fees and expenses under 28 U.S.C. § 2412.

**E. The Requested Fees and Expenses Are Reasonable**[1]

Under EAJA, a prevailing party is entitled to recover fees and expenses that were "reasonably expended on the litigation." *Hensley*, 461 U.S. at 433 (1983). The fee applicant bears the burden of submitting evidence supporting the hours worked and rates claimed, after which the burden shifts to the government to demonstrate that the requested fees are unreasonable. Id.

Here, the requested fees and expenses are reasonable in light of the nature of the litigation, the results obtained, and the work required to secure that relief. This case involved expedited federal habeas litigation challenging unlawful detention under a disputed statutory framework, requiring rapid factual development, complex legal research, and federal court advocacy. The time expended reflects the demands of that litigation and was neither excessive nor duplicative.

*i. The Hours Expended Were Reasonable*

The hours billed in this matter reflect the work reasonably necessary to investigate, develop, and successfully litigate an emergency habeas petition in federal court.

First, counsel exercised appropriate billing judgment. The submitted time records are detailed, contemporaneous, and focused solely on work directly related to the litigation. No time was billed for clerical tasks, and no entries indicate excessive, redundant, or unnecessary work. *See Hensley*, 461 U.S. at 434 (requiring exclusion of excessive or redundant hours).

[1] *See* **Exhibit B**, Petitioner's Attorneys' Fees and Expenses Calculation Sheet

Second, the time expended is proportional to the case's complexity and urgency. This litigation required: (1) rapid factual development, including multiple client interviews, in person visits while he was detained; (2) extensive legal research regarding detention authority under 8 U.S.C. §§ 1225 and 1226, the Administrative Procedure Act, and constitutional due process principles; (3) drafting of multiple substantive filings, including a habeas petition, a motion for temporary restraining order, supporting memoranda, and a reply to Respondents' opposition; and (4) post-judgment work, including research and preparation of the instant EAJA application, for which fees are recoverable. *Jean*, 496 U.S. 154, 162–65 (1990).

The distribution of work among timekeepers further supports reasonableness. Lower-billing personnel performed appropriate research and drafting tasks, while attorneys handled strategic litigation decisions, briefing, and court appearances. This allocation reflects efficient staffing and cost-effective litigation practices. Moreover, the number of hours devoted to core filings—such as the memoranda in support of the habeas petition and TRO—aligns with the complexity of the issues presented, including jurisdictional challenges, statutory interpretation, and constitutional claims.

Nor is there any improper duplication of effort. The Ninth Circuit has recognized that some degree of duplication is "inherent in the process of litigating" and may be necessary to ensure competent representation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). That principle applies here. Limited multi-attorney review

of key filings was reasonable given the expedited nature of the proceedings, the complexity of the legal issues, and the high stakes of the relief sought.

Finally, the time spent preparing this EAJA application—often referred to as "fees on fees"—is compensable and reasonable. *Jean*, 496 U.S. at 162–65.

In total, the hours billed reflect the actual work required to obtain successful habeas relief under significant time pressure. There is no basis for reduction.

*ii. The Requested Hourly Rates Are Reasonable*

The hourly rates requested are consistent with the statutory framework established by EAJA and are reasonable.

EAJA sets a statutory hourly rate, subject to cost-of-living adjustments. 28 U.S.C. § 2412(d)(2)(A). The requested attorney rate of $258.46 per hour reflects the applicable EAJA rate as adjusted for increases in the cost of living and is routinely approved by courts within this Circuit for work performed during the relevant period.[2]

The requested rate for non-attorney work—$125.00 per hour—is also reasonable and well within the range that courts approve for law clerks and paralegals performing legal research and drafting. *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008) (permitting recovery of paralegal and law clerk time at prevailing market rates).

*iii. The Requested Expenses Are Reasonable and Compensable*

In addition to fees, EAJA permits recovery of reasonable litigation expenses. 28 U.S.C. § 2412(d)(1)(A).

The requested expenses—totaling $114.66—were necessary for litigating this matter and are reasonable. It only includes the attorney's travel expenses for counsel to attend the Orange Detention correctional facility to review documents and obtain signatures in support of the Petitioner's petition.

Each of these costs was directly related to the litigation and necessary to secure the relief obtained. Courts routinely award such expenses under EAJA.

Accordingly, the total requested amount of $14,906.16 in fees and expenses reflects reasonable time, reasonable rates, and necessary litigation costs, and should be awarded in full.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court grant this Motion and award attorneys' fees and expenses under the Equal Access to Justice Act in the total amount of $14,906.16, or in such other amount as the Court deems just and proper.

Respectfully Submitted,



Jessica Ventura (NY SBN #5842851)
Rivera Julka Law Group, PC.
17 W. Main Street,
Bay Shore, NY 11706
Telephone: (631) 647-9040
Email: jessica@riverajulka.com

# A

# NET WORTH AND FEE ASSIGNMENT AFFIDAVIT OF MICHAEL JOSE PALACIOS VENTURA

I, Michael Jose Palacios Ventura, hereby declare and state:

1. My current residence is 1875 Route 302 Circleville, NY 10919-3254 .
2. I am a private individual, and my net worth does not exceed, nor has it ever, the amount of $2,000,000.
3. I make this declaration in support of my motion for attorney fees and costs incurred in my successful representation before the United States District Court for the Southern District of New York in *Palcios Ventura v. Bondi, et al.*, Case No.: 7:26-cv-00568-NSR.
4. I previously retained the Rivera Julka Law Group to represent me in this case.
5. I authorize the recovery of fees and expenses to my attorney's office in order to compensate them for work performed on my behalf.
6. I further assign payment of any award of fees and costs to Counsel's office and request payment to the Rivera Julka Group, either via a check mailed to their office address at 17 W. Main St., Bay Shore, NY 11706 or directly deposited into their office's account.
7. To the best of my knowledge, I do not owe any debt to the United States federal government.

I declare under penalty of perjury under the laws of the State of New York that the above is true and correct to the best of my knowledge and belief.

Sworn to me this 20th day of May 2026,

Michael Jose Palacios Ventura

Notary Public

JOSHUA R. STICKELL
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Suffolk County
01ST6412993
MY COMMISSION EXPIRES 05/15/2029

# B

**Non-Attorney Market Rates (enter the prevailing market rate you will claim)**

| Role | Hourly Rate ($/hr) | Notes / Source | Apply? (Y/N) |
|---|---|---|---|
| Paralegal | 45.00 | | Y |
| Law Clerk | 125.00 | | Y |
| Intern | 20.00 | | N |

| Year | CPI-U | Baseline | Cap | Statutory Rate | Multiplier | Enhanced Rate | Use Enhanced (Y/N) | Final Rate |
|---|---|---|---|---|---|---|---|---|
| 2018 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2019 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2020 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2021 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2022 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2023 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2024 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |
| 2025 | | 155.7 | 125 | 0 | 2 | 311.4 | Y | 311.4 |
| 2026 | | 155.7 | 125 | 0 | 2 | 0 | Y | 0 |

| Date | Timekeeper | Role | Category | Year | Task | Hours | Enhanced Rate | Enhanced Fee | Statutory Rate | Statutory Fee |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/2025 | Joshua | Attorney | Client Meeting | 2025 | Attorney-client TELEPHONIC meeting with MJPV's guardian to discuss the circumstances of MJPV's ICE detention | 1.00 | $311.40 | $311.40 | 155.7 | $155.70 |
| 11/3/2025 | Jessica V. | Attorney | Client Meeting | 2025 | Meeting with MJPV's guardian to review circumstances of his arrest, his arrival to the United States, and discuss filing the habaeas and the process. | 2.50 | $311.40 | $778.50 | 155.7 | $389.25 |
| 11/4/2025 | Jessica V. | Attorney | RESEARCH | 2025 | Research SDNY case law regarding 8 U.S.C. § 1225/1226 for arriving alien, APA, and Fifth Am. Due Process | 6.00 | $311.40 | $1,868.40 | 155.7 | $934.20 |
| 11/5/2025 | Jessica V. | Attorney | DRAFT | 2025 | Civil cover sheet, petition for writ of habeas corpus | 2.00 | $311.40 | $622.80 | 155.7 | $311.40 |
| 11/6/2025 | Melissa F. | Attorney | Client Meeting | 2025 | Traveled to Orange County Correctional facility to discuss filing habeas and TRO with client. Review petition and obtain signature from client | 5.00 | $311.40 | $1,557.00 | 155.7 | $778.50 |
| 12/9/2025 | Joshua S. | Attorney | DRAFT | 2025 | Began draft of memorandum in support of Motion for TRO/PI | 6.00 | $311.40 | $1,868.40 | 155.7 | $934.20 |
| 12/15/2025 | Jessica V. | Attorney | DRAFT | 2025 | Began draft of Memorandum in Support of Habeas Petition + addedum outlining timeline of MJPV's's detention + immigration proceedings. | 7.00 | $311.40 | $2,179.80 | 155.7 | $1,089.90 |
| 1/2/2026 | Aaron | Attorney | REVIEW | 2026 | Partner review of memo in support of TRO Motion | 2.00 | $311.40 | $622.80 | 155.7 | $311.40 |
| 1/18/2026 | Eduardo | Attorney | Review | 2026 | Partner review of memo in support of habeas petition, and proposed summons + rider | 2.00 | $311.40 | $622.80 | 155.7 | $311.40 |
| 2/12/2026 | Jessica V. | Attorney | DRAFT | 2026 | Reply to Government Opposition to Petition for Writ of Habeas | 10.00 | $311.40 | $3,114.00 | 155.7 | $1,557.00 |
| 2/13/2026 | Eduardo | Attorney | DRAFT | 2026 | Partner review of Reply to Government Opposition | 2.00 | $311.40 | $622.80 | 155.7 | $311.40 |
| 2/17/2026 | Joshua | Attorney | Finalize | 2026 | Finalize edits to Reply and filed | 2.00 | $311.40 | $622.80 | 155.7 | $311.40 |

| Date | Description | Note | Amount |
|---|---|---|---|
| 11/6/2026 | Attorney travel to the MDC - mileage | Hempstead, NY --> Orange County = 81.9 miles… Round trip = 163.8 miles… IRS mileage rate for 2025 = $0.70/mile. 163.8 miles x .70 | $114.66 |

| | |
|---|---|
| **Total Hours** | 47.50 |
| **Total Fees STATUTORY (raw total)** | $7,395.75 |
| **Total Fees ENHANCED (raw total)** | $14,791.50 |
| | |
| **Costs** | $114.66 |
| | |
| **Enhanced + Costs** | $14,906.16 |
| **Statutory + Costs** | $7,510.41 |